## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DIANE and RODNEY DISHMAN
and ANTHONY COSTANZO, on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

ATLAS ROOFING CORPORATION,

        Defendant.

_____/

CASE NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiffs, Diane and Rodney Dishman and Anthony Costanzo ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, sue Defendant, Atlas Roofing Corporation (hereinafter referred to as "Atlas" and/or "Defendant"), and for their Class Action Complaint allege, upon information and belief and based on the investigation to date of its counsel, as follows:

### NATURE OF ACTION

1. This is a product liability class action asserting claims for breach of

express warranty, breach of implied warranties of merchantability, negligence/gross negligence/negligent design, strict liability, unjust enrichment and seeking damages and declaratory relief in connection with defective shingles designed, manufactured, marketed, advertised and sold by Atlas.

2.    At all times material hereto, Atlas designed, manufactured, marketed and sold its Atlas Chalet Shingles ("the Shingles" or "Atlas' Shingles"), and represented, marketed, and warranted them to be durable, reliable, free from defects and compliant with certain industry standards so as to be appropriate for use on the homes, residences, buildings, and other structures of Plaintiffs and the Class.

3.    In contrast to Atlas' warranties and representations concerning the Shingles, the Shingles were defective at the time of sale and thereafter because they blister and crack, leading to early granule loss, increased moisture absorption, premature deterioration and otherwise do not perform as expressly warranted and represented, causing damage to other components of the structures on which they were installed and, in some instances, to property in the interior of the structures. Nevertheless, even after Atlas learned of the defect, it continued to sell the Shingles to the public and to make false representations and warranties, despite knowing the defects would eventually cause consumers enormous property damage and

2

substantial removal and replacement costs. Atlas finally discontinued the manufacture of the Shingles in mid-2010.

4.     As a result of Atlas' defective Shingles, Plaintiffs and the Class members have suffered and continue to suffer extensive damages. This class action seeks damages, injunctive relief, costs, attorneys' fees, and all other relief available.

## INTRODUCTION AND BACKGROUND

5.     Atlas designed, manufactured, distributed and sold the Shingles for many years in many states, including throughout Georgia. Upon information and belief, Atlas was made aware of the potential for blistering and cracking of its Shingles but did nothing to correct the defective design or formulation that resulted in blistering or degradation of the life expectancy of the Shingles, or other defects alleged herein.

6.     Atlas sold the Shingles to the builders, contractors and suppliers who installed the Shingles in homes and buildings owned by Plaintiffs and the Class members.  In conjunction with each sale, Atlas expressly extended a 30-year warranty to the original homeowner (and, for a more limited period, to a subsequent purchaser of the home) that the Shingles would be free from defects or it would repair or replace the Shingles.

7.     In addition, Atlas represented and warranted that the Shingles conformed to applicable building codes and certain industry standards.  It was a part of the basis of the bargain that the Shingles conformed to applicable building codes and these industry standards when Plaintiffs and the Class purchased the Shingles.

8.     Additionally, Atlas made representations to Plaintiffs and the Class regarding the existence of its 30-year warranty and the compliance of the Shingles with certain industry standards in documents available to the public, including product brochures, marketing materials and product labels. Atlas made these representations before the original purchase of the Shingles.

9.     Plaintiffs, the Class and their builders/contractors relied upon these representations and warranties which became a basis of the bargain when Plaintiffs, Plaintiffs' builders/contractors, Class Members and/or Class Members' builders/contractors purchased the Shingles.

10.     However, as discussed herein, the Shingles do not conform to Atlas' express representations and warranties. At the time of sale, the Shingles were not merchantable and not reasonably suited to the use intended based on their defective design and manufacture by Atlas.

11.     Specifically, the Shingles are defective because Atlas improperly

designed the Shingles to be manufactured in a manner that permits moisture to intrude into the Shingle creating a gas bubble that permits blistering and cracking. The blistering and cracking cause early granule loss, increased moisture absorption, and reduced life-expectancy of the Shingles.

12.     The defects present in Atlas' Shingles make the Shingles unfit for their intended use and are so severe that Plaintiffs and members of the Class must repair or replace their Shingles sooner than reasonably expected by ordinary consumers who purchase shingles generally or by consumers who purchased Atlas' Shingles. In addition, the Shingles are so defectively designed and manufactured that they prematurely fail and cause damage to the underlying structures and other property of the Plaintiffs and the Class by, in some instances, permitting water leaks.

13.      Upon information and belief, Atlas discovered the foregoing defects in the Shingles but continued to market and sell them to the public, including Plaintiffs and the Class.

14.     Atlas knew or should have known of the building code requirements in Georgia,[1] and that these requirements included conformance with certain industry

---

[1] Georgia has adopted mandatory building codes, including the International Building Code and the International Residential Code for One- and Two-Family Dwellings.  O.C.G.A. § 8-2-20(9)(B).

standards for asphalt shingles.

15. Atlas knew or should have known that its Shingles did not satisfy these industry standards, and as a result, Atlas knew or should have known its Shingles failed to comply with applicable Georgia building codes.

16. Atlas also knew or should have known that its Shingles were defective in design, were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Atlas or with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class.

17. Indeed, because the Shingles blister, which leads to early granule loss and degradation in life expectancy of the Shingles, the Shingles are neither durable nor suitable for use as a building product.

18. This defective condition is common among the Plaintiffs and the Class, each owners of structures upon which the Shingles have been installed.

19. Thus, the Shingles have failed to meet Atlas' representations and warranties and, given the blistering, cracking and premature deterioration of the Shingles that requires unexpected repair and replacement, the Shingles have not proven to be of value when compared to other roofing products.

6

## **PARTIES**

20.     Plaintiffs, Diane and Rodney Dishman (the "Dishmans"), are citizens and residents of the State of Georgia and are domiciled at 781 Poplar Road, Dallas, Georgia, and their home contains the Shingles which were installed in 2010. At the time of their purchase of the Shingles, the Dishmans were aware of the existence of the Atlas warranty and other representations regarding the quality and performance of the Shingles.  A copy of the Atlas warranty for the Shingles is attached hereto as Exhibit A and incorporated herein by reference (the "Atlas Warranty").   The Dishmans purchased the Shingles based, in part, on the existence of the Atlas Warranty and other representations regarding the quality and performance of the Shingles and with the reasonable expectation that the Shingles would be free from defects.  The Dishmans would not have purchased the Shingles if they had known of the defects described herein.

21.     Based on the blistering and cracking of the Shingles after installation, the Dishmans filed a warranty claim with Atlas pursuant to the Atlas Warranty.  On January 11, 2013, in response to the Dishmans' warranty claim, Atlas denied their claim by asserting the problems were merely "cosmetic" and has refused to replace or repair the Shingles.

7

22.    Plaintiff, Anthony Costanzo ("Costanzo"), is a citizen and resident of the State of Georgia and is domiciled at 8830 Patricia Rose, Douglasville, Douglas County, Georgia, and his home contains the Shingles. The Shingles were installed during the original construction of his home.  Mr. Costanzo purchased his home based, in part, on the existence of builder and manufacturer warranties (such as the Atlas Warranty) and with the expectation that the Shingles would be free from defects.  Costanzo would not have purchased his home (at least at the price he paid) if he had known of the defective Shingles.

23.    Due to the defects in the Shingles described herein which permitted leaks into his home damaging other property, including, without limitation, drywall in his ceiling in multiple areas of his house, Costanzo filed a warranty claim with Atlas. On July 12, 2010, Atlas denied Costanzo's warranty requests by asserting that "the sample shingles submitted were tested and were found to meet manufacturing specifications." Atlas also incorrectly asserted, "in regard to the report of leaks, the shingles are not allowing the leaking; the leaking is from another source." Due to the leaks, Costanzo has had to pay to replace drywall in his home.

24.    Defendant Atlas Roofing Corporation is a Mississippi corporation with its principal place of business located at 802 Hwy 19 N., Suite 190, Meridian,

Mississippi 39301.

25.     Atlas holds itself out to both the construction industry and the public at large as being knowledgeable in the design and manufacture of roofing products and as being providers of quality roofing products, including the Shingles that are the subject of this litigation.

26.     Atlas claims to be "an industry leader with 17 plants in North America and worldwide product distribution"[2] and represents that its roofing products "are designed to give our customers value, design and long lasting quality."

<b><u>JURISDICTION AND VENUE</u></b>

27.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (Plaintiffs are citizens of Georgia and Defendant is domiciled and incorporated in Mississippi and maintains its principal place of business in Mississippi, (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff class.

28.     This Court also has subject matter jurisdiction over this class action

---

[2] http://www.atlasroofing.com/general2.php?section_url=141 (June 16, 2013)

pursuant to 28 U.S.C. § 1332(a) because the Plaintiffs and Atlas are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

29.     Defendants conduct substantial business in Georgia, including the sale and distribution of the Shingles in Georgia, and have sufficient contacts with Georgia or otherwise intentionally avail themselves of the laws and markets of Georgia, so as to sustain this Court's jurisdiction over Defendant.

30.     Venue lies in this District, pursuant to 28 U.S.C. §1391, because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District.   In addition, Atlas does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District and resides here for venue purposes.

31.     Furthermore, as a result of Atlas' manufacturing, marketing, distributing, promoting, and/or selling the Shingles, either directly or indirectly through third parties or related entities, to purchasers throughout Georgia, including Plaintiffs, Atlas obtained the benefits of the laws of Georgia and profited from Georgia commerce.

32.    Atlas conducted systematic and continuous business activities in and throughout the State of Georgia and otherwise intentionally availed itself of the markets of the State of Georgia through the promotion and marketing of its business to consumers in Georgia, including Plaintiffs.

## CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this class action pursuant to Rule 23 of Federal Rule of Civil Procedure, and case law thereunder on behalf of themselves and all others similarly situated, with the Class defined as follows:

**DAMAGES CLASS**:

**All persons and entities that own homes, residences, buildings, or other structures physically located in the State of Georgia on which Atlas Chalet Shingles are currently installed and which evidence the defect described herein or were previously installed and have been replaced by the owners due to the defect.**

**DECLARATORY RELIEF CLASS**:

**All persons and entities that own homes, residences, buildings, or other structures physically located in the State of Georgia on which Atlas Chalet Shingles are currently installed and evidence the defect described herein.**

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Atlas and any entity in which Atlas has a controlling interest or which has a controlling interest in Atlas and its legal representatives, assigns and successors of Atlas; and (c) all persons who properly execute and file a timely request for exclusion from the Class. Plaintiffs reserve the right to amend the class definition.

34. *Numerosity*: The Class is composed of thousands of persons geographically dispersed throughout the State of Georgia, the joinder of whom in one action is impractical.  Moreover, upon information and belief, the Class is ascertainable and identifiable from Atlas' records or identifying marks on the Shingles.

35. *Commonality*: The critical question of law and fact common to the Plaintiff Class that will materially advance the litigation is whether the Shingles are inherently defective and do not conform to applicable building codes and industry standards, contrary to the expectations imparted by Atlas through its representations and omissions.

36. Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting

only individual members of the Class include, without limitation, the following:

a. Whether the Shingles have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

b. Whether the Shingles are defective;

c. Whether the Shingles when sold were not merchantable and reasonably suited to the use intended;

d. Whether Atlas violated its statutory duty of care as set forth by O.C.G.A. § 51-1-11;

e. Whether the Shingles conform to the applicable building code and/or relevant industry standards;

f. Whether Atlas breached its express warranty that the Shingles would be free from defects;

g. Whether, pursuant to O.C.G.A. § 11-2-313, Atlas made express warranties to Plaintiffs and the Class by representing that the Shingles complied with applicable building codes and certain industry standards;

h. Whether Atlas breached its express warranty to Plaintiffs and the Class that the Shingles complied with applicable building codes and certain industry standards;

i. Whether Atlas breached the implied warranty of merchantability in that the Shingles: (i) are not fit for the ordinary purposes for which the Shingles were sold; (ii) would not pass without objection in the trade; or (iii) failed to conform to the promises or affirmations of fact made by Atlas in conjunction with the sale of the Shingles;

j. Whether and when Atlas knew or should have known of the defect;

k. Whether Atlas concealed from consumers and/or failed to disclose to consumers the defect;

l.   Whether Atlas' expertise and superior knowledge gave rise to a duty to disclose the material facts which were concealed;

m.   Whether Atlas' express Warranty fails of its essential purpose;

n.   Whether Atlas' limitations and exclusions contained in Atlas' Warranty are unconscionable;

o.   Whether the purported disclaimer of implied warranties contained in the Atlas Warranty is rendered unenforceable by being insufficiently conspicuous;

p.   Whether Atlas failed to properly disclaim any limitation to pay for installation of replacement Shingles;

q.   Whether Plaintiffs and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of the Shingles and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Shingles as warranted and the Shingles containing the defect; (iv) the cost of repair/replacement of Class members' other property damaged as a result of the defective Shingles; and (iii) the diminution of resale value of the residences and buildings resulting from the defect in the Shingles;

r.   Whether Plaintiffs and the Class are entitled to all costs associated with replacement of their defective Shingles with non-defective shingles; and

s.   Whether Plaintiffs and the Class are entitled to restitution and/or disgorgement; and

t.   Whether all members of the Declaratory Relief Class are entitled to injunctive relief requiring Defendant to provide notice of the defect, reassess warranty claims and repair and replace the Shingles as necessary.

14

37.   *Typicality*:  Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Atlas' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Shingles and Atlas' conduct in concealing the defect in the Shingles to owners, contractors, developers, and suppliers.

38.   *Adequate Representation*:  Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class.  Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, *inter alia*, breach of warranties, product liability and product design defects.

39.   *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.  Should individual Class members be required to bring separate actions, this Court and/or courts throughout Georgia would be confronted with a multiplicity of

15

lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A. Design and Manufacturing of Atlas' Shingles and Atlas' Warranties

40.    Atlas represents to Plaintiffs and the proposed Class, in documents generally available to the public, that its Shingles will last for thirty (30) years without problems, or the company would remedy the situation. It also represents that the Shingles meet industry accepted building code and industry standards. Atlas makes these representations before purchase and at the time of purchase via its written warranty, sales brochures, marketing materials (including but not limited to store displays, sales seminars, and training materials), and on the Shingles packaging. These representations became the basis of the bargain when Plaintiffs and Class Members purchased the Shingles, and Plaintiffs and Class Members would not have purchased the Shingles (or the homes on which they were installed)

16

and would have instead purchased a competitor's shingles, had they known the Shingles did not meet the applicable standards.

41. Specifically, Atlas provides a 30-year warranty that its products will be "free from manufacturing defects."

42. Atlas also warrants and guarantees that its Shingles conform to all applicable industry standards and building codes such as ASTM D 3018, Type 1; ASTM D 3161, ASTM D 3462 and ASTM E 108. However, the Shingles do not conform to these warranties.

43. In order to comply with applicable building codes and industry standards as represented by Atlas, Atlas must manufacture its shingles from a rolled glass fiber felt that is impregnated and coated with an asphaltic material.

44. The asphaltic material used to impregnate, laminate and coat the glass felt is permitted to be compounded with a mineral stabilizer. Glass fibers are permitted to be compounded with the asphalt in addition to, or instead of, the mineral stabilizer. The bottom side of the Shingles is required to be covered with a suitable material such as pulverized sand, talc, or mica to prevent the Shingles from sticking together in the package.

45. The weather surface of a shingle must be uniform in finish and may be

embossed to simulate a grainy texture. The mineral granules shall cover the entire surface and shall be firmly embedded in the asphalt coating. The granules may project into the mat to a limited degree.

46.     Finished shingles are required to be free of visible defects such as holes, edges, blisters, cracks or indentations and should not have excessive moisture.

47.     Throughout the manufacturing process, care must be taken not to introduce moisture into the shingles, as moisture creates gas bubbles that flatten and will expand when exposed to the sun resulting in blistering and cracks in the shingles.

48.     Atlas' design and manufacturing process of the Shingles, however, permits moisture to intrude into the Shingles, creating a gas bubble that expands when the Shingles are exposed to the sun resulting in cracking, blistering and premature deterioration of the Shingles. Due to the defect in Atlas' design and manufacturing of the Shingles, the Shingles do not conform to Atlas' express representations and warranties and do not conform to the applicable building codes or industry standards.

**B. Atlas Refused to Notify Customers That Defects and Failures are Associated With Its Shingles.**

49.     Upon information and belief, Atlas has received hundreds of warranty claims alleging the same design and/or manufacturing defect that is the subject of this class action throughout Georgia and the United States. Upon information and belief, Atlas has improperly rejected some of these warranty claims and settled others in a manner not consistent with the warranty terms and well below the actual cost to repair and replace the Shingles with other non-defective Shingles.

50.     Atlas' response to customers' warranty submissions and other reasonable requests for assistance and compensation (including those of Plaintiffs and the Class) is woefully inadequate and unconscionable.

51.     For instance, after noticing that the Shingles on their houses were cracking, splitting and blistering, as discussed previously, Plaintiffs submitted warranty claims in accordance with Atlas' warranty requirements notifying Atlas of the defects present in the Shingles. Atlas simply denied these warranty claims. Instead of disclosing that there was a design and manufacturing defect in the Shingles that results in the aforementioned cracking, blistering and splitting, Atlas asserted that there was no manufacturing defect present in the Shingles. Instead, Atlas asserted that the damages Plaintiffs identified in their warranty claim were

19

due to cosmetic damages to the overlay, and that any water intrusion experienced by Plaintiffs was not due in any part to defective shingles.

52.    Despite receiving complaints from consumers such as Plaintiffs and other members of the Class regarding the defect in design and manufacturing, Atlas has refused to convey effective notice to consumers concerning the defects associated with the Shingles and refused to fully repair the damage caused by the premature failure(s) of its product. Instead, Atlas has asserted that the defects in the Shingles are due to weather damage and/or installation.

53.    The damages suffered by Plaintiffs were a foreseeable result of Atlas' design and manufacture of a product with the defects discussed herein. Likewise, the manufacturing, production, marketing, distribution, and sale of its defective product are in the complete control of Atlas, and, thus, the defects were foreseeable to Atlas.

54.    Atlas has received and continues to receive numerous complaints and claims from homeowners, property owners, developers and installers regarding the failure of Atlas Shingles, and, thus, Atlas knew or should have known that its product was and is defective.

55.    Atlas failed to take any steps to notify Plaintiffs and the Class members

of the defects in its Shingles. Furthermore, Atlas has failed to take steps to adequately compensate Plaintiffs and the Class in order to make them whole for the damage they have suffered and continue to suffer as a result of the defective Shingles.

56.    As a result of the defects and failures alleged herein, Plaintiffs and the Class have suffered actual damages.  The Shingles on their homes, residences, buildings, and other structures have and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Atlas, and the time warranted by Atlas, resulting in and requiring them to expend large sums of money to repair the damage caused by the defective Shingles and to prevent such damage from continuing.

57.    At all relevant times, Atlas had a duty to disclose to Plaintiffs and the Class that its Shingles were and are defective, prone to foreseeable and uniform problems such as the problems described herein, and otherwise were inherently flawed in design such that the Shingles are not reasonably suitable for use as an exterior building material.

58.    Since the defects in the Shingles are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to

discover their Shingles were defective until after installation, even with the exercise of due diligence.

59.    The Shingles designed, manufactured, produced, marketed, and sold by Atlas are defectively designed and manufactured such that they fail prematurely, causing damage to the property of Plaintiffs and members of the Class and forcing them to repair or replace their Shingles sooner than reasonably expected, marketed, and warranted.

60.    Plaintiffs seek to recover for themselves and the Class the costs of repairing the damage to their property and replacing their Shingles.  They also seek injunctive relief requiring Atlas to replace the defective Shingles and modify the warranty claims process to uniformly provide relief in accordance with its obligations under the law.

**ESTOPPEL FROM PLEADING STATUTES
OF LIMITATIONS OR REPOSE**

61.    Plaintiffs are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs did not discover the defect, and could not reasonably have discovered the defect.  Plaintiffs have brought the warranty claim prior to the expiration of the warranty.

62.    In addition, Defendant is estopped from relying on any statutes of

limitation or repose by virtue of their acts of fraudulent concealment, which include Defendant's intentional concealment from Plaintiffs and the general public that their Shingles were defective, while continually marketing the Shingles as a durable and suitable product.

63.     Atlas had a duty to disclose that its Shingles were defective, unreliable, and inherently flawed in design and/or manufacture.

64.     Plaintiffs and the Class had no knowledge of, and no reasonable way of discovering, the latent defects found in Atlas' Shingles at the time they purchased the product or when the Shingles were installed on their homes, residences, buildings, and other structures.

65.     Atlas did not notify, inform, or disclose to Plaintiffs and the Class that there were defects in the Shingles. After discovering the defective nature of the Atlas Shingles, Plaintiffs adequately notified Atlas and participated fully in Defendant's warranty claim process.

66.     Furthermore, Atlas representatives fraudulently misrepresented to Plaintiffs and the Class members that the damage they observed was not the result of manufacturing defects.  Statements such as these constitute an active effort by Atlas to conceal and misrepresent the true cause of the damage and hide the fact

that the product is defective.

67.     Because Atlas failed in its duty to notify Plaintiff and Class members that its product was defective and actively attempted to conceal this fact, Atlas should be stopped from asserting defenses based on statutes of limitation or repose.

## COUNT I
## BREACH OF EXPRESS WARRANTY

68.     Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference the allegations contained in paragraphs 1 through 67 as though fully set forth herein.

69.     Atlas marketed and sold Shingles into the stream of commerce with the intent that the Shingles would be purchased by Plaintiffs and members of the Class and it extended express warranties to Plaintiffs and Class Members.

70.     Through its Warranty, brochures, and marketing materials regarding the durability and quality of the Shingles, Atlas created express warranties that became part of the basis of the bargain with Plaintiffs and the members of the Class.

71.     Atlas expressly warranted to Plaintiffs and Class members that the Shingles purchased by Plaintiffs and Class members were free from defects that would substantially impair their operation or performance and that they would last

at least 30 years.

72.     Atlas also expressly represented that the Shingles would conform to all applicable building codes and certain industry standards.

73.     These representations became the basis of the bargain when Plaintiffs and the Class members purchased the Shingles.  Plaintiffs and Class members would not have purchased the Shingles (or the homes on which they were installed) if it was disclosed that the Shingles did not conform to Atlas' express representations and warranties.

74.     Atlas breached its express warranties to Plaintiffs and the Class in that its Shingles did not, and do not, maintain their structural integrity or perform as promised or conform to all applicable building codes and industry standards.  Atlas' Shingles blister and have early granule loss, wear pits, increased moisture absorption, premature failure, reduced life expectancy, and otherwise do not perform as warranted by Defendant.

75.     Atlas' warranties fail their essential purpose because they purport to warrant that the Shingles will be free from defects for at least 30 years when in fact the Shingles fall far short of the applicable warranty period.  To the contrary, due to the blisters in the Shingles, Atlas' Shingles begin failing after only several years' or

less use.

76.     Moreover, Atlas' warranties are woefully inadequate to repair and replace failed Shingles, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Atlas' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because Atlas asserts that the defect is caused by the weather and/or installation.

77.     The limitations on remedies and the exclusions in Atlas' warranties are unconscionable and unenforceable in light of the fact that Atlas knew or should have known that the Shingles suffered from the inherent design and manufacturing defects described herein.

78.     Atlas has denied, failed to pay in full, or failed to respond to Plaintiffs' Class Members' valid warranty claims.

79.     Atlas' breach of its express warranties has caused Plaintiffs and the Class actual damages, including, without limitation, the expense of repairing or replacing the Shingles. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiff's and Class members' homes and structures.

80.    As a direct and proximate result of Atlas' breach of the express warranties, Plaintiffs and Class Members have suffered actual and consequential damages.

## COUNT II
## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY

81.    Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

82.    Because Atlas extended an express warranty for the Shingles to Plaintiffs and the Class, privity of contract exists between Atlas and Plaintiffs and the Class.

83.    Atlas is a designer, manufacturer and supplier of the Shingles and for a number of years, marketed, warranted, distributed, and/or sold the Shingles in Georgia.

84.    Atlas manufactured and sold its Shingles to Plaintiff and the Class members, and, in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

27

85.    However, Atlas' Shingles were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Shingles described herein.

86.    Atlas's Shingles would not pass without objection in the trade under Atlas' product description.

87.    The numerous and serious defects described herein make the Shingles unfit and inappropriate for its intended use as a covering for building exteriors.

88.    Even after Plaintiffs became aware of the blistering and gave proper notice to Atlas, Atlas failed to provide an adequate remedy.

89.    As a result, Atlas breached its implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

90.    Also, for the reasons set forth more fully above, the limitations and exclusions contained in the Atlas Warranty, including the purported exclusion of implied warranties, are unconscionable and cause the Atlas Warranty to fail of its essential purpose.   Accordingly, such limitations and exclusions should not be enforced against Plaintiffs and the Class members.

91.    In addition, the alleged disclaimer of implied warranties in the Atlas Warranty is not sufficiently conspicuous and is therefore not enforceable.

92.    As a direct and proximate result of Atlas' breach of its implied warranties, Plaintiffs and Class Members have suffered actual and consequential damages.

## COUNT III
## NEGLIGENCE /NEGLIGENT DESIGN

93.    Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference the allegations contained in paragraphs 1 through 92 as though fully set forth herein.

94.    At all times material hereto, Atlas designed and manufactured the Shingles.

95.    Atlas had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Shingles either through its own testing or by verifying third-party test results.

96.    Atlas had a duty to Plaintiffs and Class Members to ensure that the Shingles complied with all applicable building codes and industry standards.

97.    Atlas breached its duty by producing and selling a inherently defective shingles to Plaintiffs and the Class members.

98. Atlas failed to exercise ordinary and reasonable care in the design and manufacture of the Shingles.

99. As described herein, Atlas' defective Shingles have failed in numerous ways, including blistering, early granule loss, wear pits, increased moisture absorption, premature failure, and reduced life expectancy.

100. Atlas further breached its duty by failing to notify Plaintiff and the Class members of the defects in the Shingles they were purchasing and installing and by failing to take any remedial action once Atlas was on notice that its product was defective.

101. Atlas knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior shingle, and otherwise were not as warranted and represented by Atlas.

102. Were the design defects known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

103. It was also completely foreseeable to Atlas that Plaintiffs and the Class members would rely upon Atlas' marketing claims and other representations regarding the quality and life-expectancy when purchasing Atlas Shingles.

104.   As a direct and proximate cause of Atlas' negligence, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes, residences, buildings, and other structures an exterior Shingles product that is defective and that fails prematurely due to blistering, early granule loss, wear pits, premature failure, reduced life expectancy, moisture penetration, and other inherent defects.

105.   On information and belief, the defect has caused damage to components of Plaintiffs' and Class members' homes, residences, buildings, and other structures distinct from the Shingles themselves, including, for example, other roof components and ceilings. These failures have caused and will continue to cause Plaintiffs and the Class to incur expenses repairing or replacing their Shingles as well as the resultant progressive property damage.

## COUNT IV
## STRICT PRODUCTS LIABILITY

106.   Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference the allegations contained in paragraphs 1 through 105 as though fully set forth herein.

107.   At all times relevant to this Complaint, Atlas was engaged in the design, manufacture, and sale of the Shingles and had a statutory duty of care as set forth by O.C.G.A. § 51-1-11.

108.   As detailed herein, Atlas breached this duty of care by designing Shingles which blister, have early granule loss, wear pits, increased moisture absorption, reduced life expectancy, and deteriorate prematurely.

109.   As a result of these defects, the Shingles, at the time of sale, were not merchantable or reasonably suited to the use intended and reached consumers without substantial or significant changes in the condition from when Atlas sold them.

110.   Atlas' breach of its statutory duties was the actual and proximate cause of Plaintiffs' and the Class members' damages.

111.   The defective Shingles caused, among other damages and expense, damage to the underlying structure, in some cases including leaks into the interior of the home.  These damages include components of the structures distinct from the Shingles themselves, including, for example, other roof components and ceilings.

112.   Because of Atlas' defective design of the Shingles, Plaintiffs and the putative Class members have been, currently are, and will be damaged in an amount

to be determined at trial.

113.   Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## COUNT V
## UNJUST ENRICHMENT

114.   Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference the allegations contained in paragraphs 1 through 113 as though fully set forth herein.

115.   Substantial benefits have been conferred on Defendant by Plaintiffs and the Class and Defendant has knowingly and willingly accepted these benefits.

116.   Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Shingles would perform as represented and warranted.  For Defendant to retain the benefit of the payments under these circumstances described herein would be inequitable.

117.   Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefits without payment of the value to the Plaintiffs and the Class.

118.   Defendant, by the deliberate and fraudulent conduct complained of herein, have been unjustly enriched in a manner that warrants restitution.

119.   Plaintiffs and the Class are entitled to recover from Atlas all amounts wrongfully collected and improperly retained by Atlas, plus interest thereon.

120.   As a proximate consequence of Defendant's improper conduct, the Plaintiffs and the Class members were injured. Defendant has been unjustly enriched and should not be allowed to obtain this benefit.

## COUNT VI
## DECLARATORY RELIEF

121.   Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference all allegations contained in paragraphs 1 through 120 as though fully set forth herein.

122.   Defendants have acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole

within the meaning of Fed. R. Civ. P. 23.

123.   Plaintiffs seeks a ruling with respect to the Declaratory Relief Class that:

a.   The Shingles have a defect which results in premature failure;

b.   Defendant's warranty fails of its essential purpose;

c.   Defendant's warranty is void as unconscionable;

d.   Defendant must notify members of the Class of the defect;

e.   Defendant will reassess all prior warranty claims by members of the Class and pay the full costs of repair or replacement; and

f.   Defendant will pay the costs of inspection of all Class members who have not filed warranty claims to determine whether any Class member's Shingles need replacement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for a judgment against Atlas Roofing Corporation as follows:

a.   For an Order certifying the Class, pursuant to Rule 23, appointing Plaintiffs as representatives of the Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

b.     For compensatory damages, and all other damages allowable under the law, sustained by Plaintiffs and the Class;

c.     For equitable and/or injunctive relief;

d.     For an Order declaring that: all Atlas Chalet Shingles manufactured from 1999 until the present have defects that cause them to blister, crack and prematurely deteriorate; that Atlas knew of the defects in its Shingles in that the limitations contained in its purported limited warranties are unenforceable; that Atlas be required to reassess all prior warranty claims on the Shingles, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and that Atlas establish an inspection program and protocol to be communicated to Class members that will require Atlas to inspect, upon request, a Class member's structure to determine whether a Shingle failure is occurring;

e.     For an Order declaring that Atlas must account for and disgorge for the benefit of the Class all or part of the ill-gotten profits it received from the sale of the Shingles, or ordering Atlas to make full restitution to Plaintiffs and the members of the Class;

f.     For payment of costs of suit herein incurred;

36

g.     For both pre-judgment and post-judgment interest at the maximum rate allowable at law on any amounts awarded;

h.     For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

i.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

This 1st day of July, 2013.

s/  Joseph Coomes, Esq.
Georgia Bar No. 184999
McConnell & Sneed, LLC
990 Hammond Drive, Suite 840
Atlanta, Georgia 30328
Tel: (404) 220-9994
Fax: (404) 665-3090
Email: ajc@mcconnellsneed.com

Christopher L. Coffin, Esq.
Georgia Bar No. 173079
Pendley, Baudin & Coffin, L.L.P.
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Tel: (504) 355-0086
Fax: (504) 523-0699
Email: ccoffin@pbclawfirm.com

Shawn M. Raiter, Esq.
Larson King, LLP
2800 Wells Fargo Place
30 East 7th Street
St. Paul, Minnesota 55101
Tel: (651) 312-6500
Fax: (651) 789-4818
Email: sraiter@larsonking.com


*Attorneys for Plaintiffs*