IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| DIANE DISHMAN, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 1:13-CV-2195-TWT |
| ATLAS ROOFING CORPORATION, | |
| Defendant. | |

## OPINION AND ORDER

This is a multi-district class action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Motion for Partial Summary Judgment as to the Plaintiffs Diane Dishman and Rodney Dishman [Doc. 65] and the Defendant's Motion for Partial Summary Judgment as to the Plaintiff Anthony Costanzo [Doc. 66]. For the reasons set forth below, the Defendant's Motion for Partial Summary Judgment as to the Plaintiffs Diane Dishman and Rodney Dishman [Doc. 65] is GRANTED in part and DENIED in part, and the Defendant's Motion for Partial Summary Judgment as to the Plaintiff Anthony Costanzo [Doc. 66] is GRANTED in part and DENIED in part.

# I. Background

The Plaintiffs Diane Dishman, Rodney Dishman, and Anthony Costanzo own homes containing Atlas Shingles (the "Shingles").[1] The Defendant Atlas Roofing Corporation designed, manufactured, and sold the Shingles.[2] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[3] In 2010, the Defendant discontinued sales of the Shingles.[4] The Plaintiffs allege that the Shingles are defective in design, and filed this action seeking to represent a class of homeowners who own homes with the Shingles.

In 2010, Diane and Rodney Dishman hired Crist Roofing & Construction, Inc. to install the Shingles on their home.[5] Crist Roofing showed the Dishmans a brochure for the Shingles.[6] The Dishmans also claim that Crist Roofing

---

[1]     It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

[2]     Dishmans' Statement of Additional Material Facts ¶¶ 1-2.

[3]     *Id.* ¶ 2.

[4]     *Id.* ¶ 21.

[5]     Def.'s Statement of Material Facts as to the Dishmans ¶ 1; Dishmans' Statement of Additional Material Facts ¶ 10.

[6]     Def.'s Statement of Material Facts as to the Dishmans ¶¶ 2-3; Dishmans' Statement of Additional Material Facts ¶ 10. The parties dispute the contents of this brochure.

showed them a sample of the Shingles.[7] A couple years after the installation of the Shingles, the Dishmans observed cracking, blistering, and excessive granule loss on the Shingles.[8] They contacted the Defendant regarding these problems.[9] On January 11, 2013, the Defendant responded by sending the Dishmans a letter denying their warranty claim.[10] In denying their claim, the Defendant noted that the blistering, cracking, and granule loss were not manufacturing defects.[11]

In 2004, Anthony Costanzo hired a contractor to build a new house in Douglasville, Georgia.[12] The contractor purchased and installed the Shingles in October 2004.[13] The parties dispute whether Costanzo viewed a sample or any Atlas marketing materials prior to installation of the Shingles. Costanzo does not recall whether he knew the brand of the Shingles prior to this purchase.[14] Furthermore, he cannot recall whether he received or reviewed the Atlas

---

[7] Dishmans' Statement of Additional Material Facts ¶ 10.

[8] *Id.* ¶ 24.

[9] *Id.* ¶ 26.

[10] *Id.*

[11] *Id.* ¶ 31.

[12] Costanzo's Statement of Additional Material Facts ¶ 10.

[13] Def.'s Statement of Material Facts as to Costanzo ¶ 2.

[14] *Id.* ¶ 4.

Limited Warranty.[15] Costanzo noticed that the Shingles had cracking, blistering, and excessive granule loss.[16] Additionally, in May 2010, Costanzo's home suffered a water leak that was visible in the ceiling of his kitchen.[17] Costanzo then contacted the Defendant regarding these problems and filed a warranty claim.[18] In his warranty claim, Costanzo noted that his problems included "blistering, deterioration, leaking."[19] On July 12, 2010, the Defendant denied Costanzo's warranty claim.[20] The Defendant explained that the "rash blisters" were not considered a manufacturing defect.[21] Later, in 2012, a roofer observed a second leak at Costanzo's home.[22] After repairs, Costanzo experienced another leak a year later.[23]

On July 1, 2013, the Plaintiffs filed the Class Action Complaint. After the Motion to Dismiss Stage, the Plaintiffs' remaining claims are for Breach of Express Warranty (Count I), Breach of Implied Warranty of Merchantability

---

[15]     *Id.*

[16]     Costanzo's Statement of Additional Material Facts ¶ 23.

[17]     *Id.*

[18]     *Id.* ¶ 24.

[19]     *Id.*

[20]     *Id.* ¶ 25.

[21]     *Id.*

[22]     *Id.* ¶ 27.

[23]     *Id.*

(Count II), Fraudulent Concealment (Count VI), Bad Faith Litigation Expenses (Count VII), and Declaratory Relief (Count VIII). The Defendant now moves for partial summary judgment as to each of the Plaintiffs.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[24] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[25] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[26] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[27] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[28]

---

[24]    FED. R. CIV. P. 56(a).

[25]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[26]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[27]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[28]    *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

### A. Diane and Rodney Dishman

The Defendant first moves for partial summary judgment as to Diane and Rodney Dishman. The Defendant argues that the Dishmans' claim for express warranty based on statements outside the Atlas Limited Warranty fails, that their fraudulent concealment claim fails due to the lack of the requisite relationship with the Defendant, that they cannot recover for leak-related damages, and that they lack standing to pursue claims for declaratory relief. The Court addresses each of these arguments.

#### 1. Express Warranty

First, the Defendant moves for summary judgment as to the Dishmans' express warranty claim based upon statements made outside the Atlas Limited Warranty. In the First Amended Complaint, the Plaintiffs allege that the Defendant made representations concerning the "durability and quality" of the Shingles in its "Warranty, brochures, and marketing materials."[29] They allege that the Defendant "represented and warranted that the Shingles conformed to applicable building codes and certain industry standards."[30] They also allege that the Defendant "expressly warranted" that "the Shingles purchased by Plaintiffs and Damages Class members were free from defects that would

---

[29]     First Am. Compl. ¶ 78.

[30]     *Id.* ¶ 9.

substantially impair their operation or performance and that they would last at least 30 years."[31]

The Defendant first argues that this claim fails because the Dishmans are unable to show that they relied upon these alleged representations when they purchased the Shingles.[32] To recover for breach of an express warranty, a plaintiff must show that the defendant made an affirmation of fact or promise which relates to the goods and became part of the basis of the bargain.[33] According to the Defendant, these representations did not become a part of the basis of the bargain because the Dishmans cannot show that they relied upon them in choosing to purchase the Shingles. However, as this Court previously acknowledged, Georgia law does not require a plaintiff to prove reliance upon a warranty.

> While no Georgia case law directly answers this question or provides a rule for decision, the Georgia General Assembly adopted the relevant Uniform Commercial Code ("UCC") Article 2 provision verbatim, so the official comments to the UCC should be "given due consideration in determining the intent" of the legislature. Those comments indicate that the "whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell," and the goal of the U.C.C. was to reflect "actual practice that affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." U.C.C. §

---

[31] *Id.* ¶ 79.

[32] Def.'s Mot. for Partial Summ. J. as to the Dishmans, at 4.

[33] O.C.G.A. § 11-2-313(1)(a).

-7-

2–313 cmts. 3–4. Any other requirement would eviscerate a warranty for the typical, busy consumer and protect only those individuals who, if Defendant's position was adopted, actually read warranty cards prior to purchase.[34]

Thus, as long as the Dishmans can show that the Defendant made such an affirmation of fact during the transaction, they need not show any particular form of reliance on those statements for the express warranties to be enforceable. Therefore, their claim for breach of express warranties outside of the Atlas Limited Warranty does not fail due to lack of reliance.

However, this express warranty claim still fails because the Dishmans have failed to provide evidence that the Defendant ever made the specific affirmations of fact or promises that allegedly constituted warranties. Although the Dishmans need not establish that they relied upon the warranties made by the Defendant, they still must prove the warranties' existence and provide evidence showing what the terms of those warranties are.[35] The comments to the U.C.C. state that "the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell" and that the goal of the provisions was to reflect that "[i]n actual practice affirmations of fact made by

---

[34] *Horn v. Boston Sci. Neuromodulation Corp.*, No. CV409-074, 2011 WL 3893812, at *11 (S.D. Ga. Aug. 26, 2011).

[35] *Grossman v. Brown & Webb Builders, Inc.*, 255 Ga. App. 897, 900 (2002). There is a distinction between requiring a plaintiff to prove reliance, such as requiring the Dishmans to show that they relied upon these statements in deciding to purchase the Shingles, and requiring a plaintiff to show that the statements constituting a warranty were made *at all* during the bargain between the parties.

the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."[36] Thus, the UCC still contemplates that the affirmation of fact *be made* by the seller during the bargain.

In a similar context, the Court of Appeals of Georgia explained that "[p]retermitting whether this circumstantial evidence raises questions of fact regarding the warranty's existence, it sheds no light on the terms of the warranty, which are critical to Grossman's claim."[37] The court noted that "[w]ithout some evidence of the warranty's terms, we do not know which defects fell within the warranty" and that the evidence provided "offer[ed] no insight into the warranty's terms."[38] Ultimately, the court concluded that summary judgment was appropriate. It explained that:

> We recognize that reasonable evidentiary inferences can raise a sufficient issue of material fact to preclude summary judgment. A party, however, cannot avoid summary judgment by citing "[a]n inference based on mere possibility, conjecture, or speculation." Here, nothing in the record sets forth the terms of the written warranty. The evidence simply does not raise a question of fact as to what the written warranty covered, and it is impossible to infer that the terms of this warranty might have been breached. Accordingly, the trial court properly granted Brown & Webb

---

[36]     O.C.G.A. § 11-2-313 cmt. 3-4; *see also Horn*, 2011 WL 3893812, at *11-12.

[37]     *Grossman*, 255 Ga. App. at 900.

[38]     *Id.*

summary judgment on Grossman's breach of express warranty claim.[39]

Thus, a party seeking to enforce an express warranty must present evidence, beyond just an inference based upon mere speculation, establishing the terms of that warranty. The Dishmans need to prove what statements or affirmations of fact the Defendant made – otherwise it would be impossible to determine whether a breach of said warranties occurred. The Dishmans have failed to do so.

Here, nothing in the record sets forth the terms of the warranties made in the outside marketing materials. The evidence provided by the Dishmans does not raise a question of fact as to what these warranties covered, and it is impossible to infer that the terms of this warranty might have been breached without knowing these contents. For example, Rodney Dishman's deposition testimony highlights these insufficiencies in the evidence. Mr. Dishman, when asked what statements the Atlas advertising materials made, responded that "you're asking me about a conversation that happened, you know -- material that was read five years ago. I mean -- and I don't -- you know, I don't have the brochure now, so I can't answer that."[40] He further admitted that he has no recollection of what the marketing materials looked like.[41] Instead, he stated

---

[39] *Id.*

[40] Rodney Dishman Dep. at 38.

[41] *Id.*

that "[w]e were just looking for a good warranty, and you know, for me to sit there and pick and choose from five different warranties" and that "we looked at a lot of warranties, and we looked at a lot of different shingles."[42]

Similarly, Diane Dishman's deposition testimony also fails to sufficiently establish the terms of the alleged warranties. She stated that their contractor "brought brochures, where you could see [the Shingles] up on the house."[43] She testified that the marketing materials "just gave the description that you always see about products" and that they described the Shingles as "quality" and that they "held up well."[44] Ms. Dishman did not recall any other statements that the materials made concerning the Shingles, could not remember any other statements that the marketing materials included, and admitted that if she saw these brochures today, she would not be able to recognize them.[45]

This evidence does not present a question of fact as to what these alleged written warranties covered, and "it is impossible to infer that the terms of this warranty might have been breached."[46] Given this lack of evidence of the warranties made by the Defendant, it would be nearly impossible to know what the Defendant promised about the Shingles, and whether the Defendant

---

[42]     *Id.* at 39-40.

[43]     Diane Dishman Dep. at 42.

[44]     *Id.* at 43.

[45]     *Id.* at 43-44.

[46]     *Grossman*, 255 Ga. App. at 900.

breached the terms of such warranties. This evidence falls far short of establishing enforceable warranties as to the durability and quality of the Shingles, or as to the Shingles' compliance with building codes and industry standards, as the Plaintiffs allege in the First Amended Complaint. Therefore, since the Dishmans have failed to produce evidence establishing the terms of the alleged express warranties in these marketing materials, the Defendant is entitled to summary judgment on this claim.

In an effort to show a dispute of material fact, the Dishmans offer statements by Kirk Villar and Anthony Mattina as evidence of express warranties made by the Defendant in its marketing materials.[47] However, this evidence only describes some of the general marketing techniques employed by the Defendant over the years to promote Shingles. It does not prove what specific statements were made *to the Dishmans* in this particular case that formed express warranties. For example, Villar, the Defendant's Vice President of Sales and Marketing, testified as to the various marketing techniques that the Defendant employed over the years to promote the Shingles. Villar testified that between 1998 and 2010, "the consistency of the message was the same," although "there were some changes."[48] Villar noted that some of the marketing materials included references to ASTM and other industry standards, although

---

[47]     Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 4.

[48]     Villar Dep. at 58.

he cannot recall whether reference to these standards were included in all of the marketing materials.[49] Similarly, Mattina, in an affidavit, references an example of marketing materials distributed by the Defendant, and notes that "[w]hile Crist did not retain any of the marketing documents regarding the [the Shingles], [this example] is an accurate representation regarding the marketing of the [Shingles] that we would have relied upon when recommending the [Shingles] to Ms. Dishman or any clients."[50] Mattina further stated in this affidavit that the Shingles "were also marketed as having a thirty (30) year warranty" and that "[a]s a roofer, I would therefore expect the Shingles to have a useful service life of thirty (30) years."

This evidence, however, does not prove what specific statements were made to the Dishmans in the marketing materials they received. Instead, it only describes various marketing techniques generally used by the Defendant over the years. It does not prove what the terms of the alleged warranties are, and does not assist the fact-finder in determining whether a breach of these warranties occurred *in this particular case*. At best, this evidence creates an inference as to which warranties were contained in the specific marketing materials the Dishmans reviewed. However, such an inference would constitute speculation that is insufficient to survive summary judgment. The Dishmans

---

[49]     *Id.* at 113-15.

[50]     Mattina Aff. ¶ 24.

need to provide evidence of the statements, promises, or affirmations of fact that the Defendant made in this transaction – not evidence of the marketing messages the Defendant used in general. They have failed to do so.

The Dishmans also argue that an express warranty was created when they viewed a sample of the Shingles.[51] However, this argument fails. O.C.G.A. § 11-2-313 provides that an express warranty can be created by sample. Specifically, § 11-2-313(1)(c) states that "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."[52] A sample is an express warranty that the goods sold and to be delivered "will be of as good quality as the samples exhibited."[53] The Dishmans have failed to show that the Shingles delivered were a different or lesser quality than the sample they observed before purchasing the Shingles. Based upon the evidence offered, the Shingles that the Dishmans received were the same Shingles that they viewed on the sample board offered by Crist. This does not constitute a breach of warranty.[54] A

---

[51]    Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 5.

[52]    O.C.G.A. § 11-2-313(1)(c).

[53]    *Christian v. Knight & Co.*, 128 Ga. 501 (1907).

[54]    *See Printing Ctr. of Tex., Inc. v. Supermind Publ'g Co.*, 669 S.W.2d 779, 784 (Tex. App. 1984) ("Appellee's witness testified that he was shown a sample of the newsprint to be used and that the tendered books were not the same color as the sample. The witness stated the pages of the books were gray while the sample was white. This testimony is evidence of nonconformity because any sample which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample.").

warranty by sample merely warrants that the good delivered will be the same or similar to the sample of the good viewed. Here, the Dishmans received the same type of Shingle as the sample they viewed. Although those Shingles may have ultimately ended up having problems, and may have breached other purported warranties, these deficiencies do not establish a breach of warranty by sample. Since the Dishmans cannot show that the Shingles they received were of a lesser quality than the sample they viewed, they cannot prove that there was a breach, which is an essential element of a breach of warranty claim.

Furthermore, the Dishmans' express warranty claim for warranties outside of the Atlas Limited Warranty also fails because the Defendant properly disclaimed all outside warranties in the Atlas Limited Warranty. O.C.G.A. § 11-2-316 provides for the exclusion or modification of warranties. The Defendant clearly disclaimed all express warranties outside of the Atlas Limited Warranty. Under a heading labeled "SOLE WARRANTY," the Atlas Limited Warranty provides, in all capitalized letters, that "ATLAS MAKES NO REPRESENTA-TION OR WARRANTY OF ANY KIND OTHER THAN THE LIMITED WARRANTY SET FORTH HEREIN."[55] Such a disclaimer is effective and enforceable.[56]

---

[55]     *See* [Doc. 65-6] at 3.

[56]     *See Reeb v. Daniels Lincoln-Mercury Co.*, 193 Ga. App. 817, 819 (1989) ("However, it is clear that appellee disclaimed all warranties, as the invoice recited that '[a]ny warranties on the products sold hereby are those made by the manufacturer. The seller, [appellee], hereby expressly disclaims all

The Dishmans argue that the Defendant's disclaimer of outside warranties fails because there was no "meeting of the minds" with regard to the Atlas Limited Warranty.[57] However, the Court finds this unpersuasive. The Dishmans want to have it both ways – they want to assert a warranty claim under the Atlas Limited Warranty while also disavowing the parts of the warranty that they do not find favorable (i.e., the disclaimer).[58] This they cannot do. They cannot, on the one hand, argue that the Defendant breached an express warranty created by the Atlas Limited Warranty, while on the other hand argue that the disclaimer does not apply because there was no meeting of the minds

_____

warranties, either express or implied, ... and [appellee] neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products.'"); *Stephens v. Crittenden Tractor Co.*, 187 Ga. App. 545, 548-49 (1988) (distinguishing between cases in which a disclaimer and inconsistent express warranties are in the same written contract and when they are not in the same contract, and concluding that a disclaimer was effective despite inconsistent express warranties outside of the contract); *see also Davenport v. Ford Motor Co.*, No. 1:05-cv-3047-WSD, 2006 WL 2048308, at *3 (N.D. Ga. July 20, 2006) ("Because an express warranty requires specific written or verbal statements by the seller about the quality of the vehicle, and the dealership specifically disclaimed all warranties in the Bill of Sale, Plaintiffs cannot assert a breach of express warranty claim against the Hutson Dealership, the seller of the vehicle.").

[57]     Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 12-14.

[58]     *Compare* First Am. Compl. ¶ 78 ("Through its Warranty, brochures, and marketing materials regarding the durability and quality of the Shingles, Atlas created express warranties that became part of the basis of the bargain with Plaintiffs and the members of the Damages Class.") *with* Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 13 ("The Limited Warranty was never provided to the Dishmans, and they never signed any warranty card asserting that they agreed to its terms limiting their rights.").

with the Atlas Limited Warranty. The Dishmans have consistently asserted that they purchased the Shingles in large part due to the thirty-year warranty, and have alleged a claim for breach of express warranty premised upon the Atlas Limited Warranty. They cannot now disregard the parts of this warranty that they find inconvenient. Therefore, since the Defendant effectively disclaimed all outside warranties in the Atlas Limited Warranty, the Dishmans' express warranty claim based upon marketing materials and other outside representations fails as a matter of law.

The Dishmans also argue that the warranty disclaimer is inconspicuous, invalid, and unconscionable.[59] The Dishmans argue that the disclaimer is invalid for the same reasons that they argue that there was no meeting of the minds. However, as already noted, the Dishmans have brought a claim based upon the warranty they now seek to disavow – they cannot now argue that this is invalid. Furthermore, the disclaimer is not inconspicuous. A term is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."[60] This includes "[a] heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size" and "[l]anguage in the body of a record or display in larger type than the surrounding text, or in

---

[59]    Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 11-12, 14-17.

[60]    O.C.G.A. § 11-1-201(b)(10).

contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language."[61] Here, the Atlas Limited Warranty is named a "limited" warranty, and under a section titled "SOLE WARRANTY," the Defendant disclaims all other warranties in capitalized letters. Such a disclaimer is not inconspicuous.

Finally, the disclaimer is not unconscionable. The Dishmans argue that it is unconscionable because the Defendant knew it was selling a defective product and still chose to disclaim outside warranties.[62] However, the case that the Dishmans rely upon, *Mullis v. Speight Seed Farms, Inc.*, is distinguishable.[63] In *Mullis*, the Court of Appeals of Georgia noted that disclaimers, like other contractual provisions, are limited by the conscionability requirement.[64] The court then concluded that the defendant's warranty disclaimer was unconscionable.[65] However, the court distinguished between the goods at issue in that case, seeds, and ordinary consumer goods. It noted that, unlike ordinary consumer goods, "[o]nce the crop has failed, the farmer's only recourse is monetary

---

[61]     *Id.*

[62]     Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 1417.

[63]     *Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27 (1998).

[64]     *Id.* at 28 ("[W]arranty disclaimers made pursuant to UCC § 2–316 are limited by the conscionability requirement in UCC § 2–302.").

[65]     *Id.* at 30.

compensation to cover his lost profit and expenditures; replacement and repair are not viable options."[66] Furthermore, the court emphasized that the disclaimer at issue in *Mullis* was procedurally unconscionable because "Mullis purchased the seed over the telephone during a conversation in which only the seed variety and price were discussed."[67] Thus, *Mullis* contained a number of important facts as to unconscionability that distinguish it from this case. In contrast, Georgia courts have regularly enforced warranty disclaimers similar to the one in the Atlas Limited Warranty.[68] Therefore, since the Defendant effectively disclaimed warranties outside of the Atlas Limited Warranty, the Dishmans' claim for breach of express warranty based upon marketing materials fails.

## 2. Fraud

Next, the Defendant moves for summary judgment as to the Dishmans' fraudulent concealment claim. "The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."[69] In their Complaint, the Dishmans assert a claim for fraud, arguing that the Defendant fraudulently concealed the alleged defects and

---

[66]     *Id.*

[67]     *Id.*

[68]     *See, e.g.*, *Reeb v. Daniels Lincoln-Mercury Co.*, 193 Ga. App. 817, 819 (1989); *Davenport v. Ford Motor Co.*, No. 1:05-cv-3047-WSD, 2006 WL 2048308, at *3 (N.D. Ga. July 20, 2006).

[69]     *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (2000).

misrepresented to potential customers that the Shingles were durable and conformed to applicable industry standards. "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud."[70] "However, in a fraudulent concealment action, there must first exist a duty to communicate the omitted or concealed material fact to the defrauded party."[71]

The Defendant argues that it lacked the requisite relationship with the Dishmans necessary for a duty to disclose to have existed. Under Georgia law, "[a] party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact."[72] The Dishmans argue in response that their fraud claim should survive for two reasons. First, they argue that the Defendant made "pre-sale affirmative misrepresentations," in the form of samples and a brochure, to induce them to purchase the Shingles while knowing that they were defective.[73] Second, they argue that the Defendant owed them a duty to disclose based upon the particular circumstances of this case. However, both of these arguments fail.

As to their first argument, the Dishmans have failed to provide sufficient evidence that the Defendant made any type of affirmative misrepresentations

---

[70]     O.C.G.A. § 23-2-53.

[71]     *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015).

[72]     *Baxter v. Fairfield Fin. Servs., Inc.*, 307 Ga. App. 286, 293 (2010) (quoting *Lilliston v. Regions Bank*, 288 Ga. App. 241, 245 (2007)).

[73]     Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 21.

beyond mere puffery, let alone that they were induced into relying upon these representations. The Dishmans never had any interaction or communication with the Defendant. Instead, they depend upon marketing materials shown to them by their builder to argue that the Defendant made affirmative misrepresentations. The Dishmans argue that they "were presented with sample Shingles and a brochure touting the quality, aesthetics and longevity of these 30-year warranty shingles." However, as discussed above, the Dishmans can only recall this brochure describing the Shingles as "quality" shingles that would hold up well.[74] Statements of puffery such as this cannot form the basis of a claim for fraud.[75] "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence."[76] When a representation merely consists of "general commendations or mere expressions of opinion, hope, expectation, and the like," the party to whom it is made is not justified in relying upon it.[77]

Furthermore, the sample of the Shingles shown to the Dishmans also fails

---

[74]     Diane Dishman Dep. at 43.

[75]     *Randall v. Smith*, 136 Ga. App. 823, 824-25 (1975) ("We conclude that appellant has not shown fraud in the inducement for several reasons. In the first place, the oral statements made by Smith, that the car was in good condition and suitable for driving was mere sales 'puffing.' The statement was that of an opinion not a statement of fact.  The statement of an opinion cannot constitute the basis for a claim of fraud.").

[76]     *Wilkinson v. Walker*, 143 Ga. App. 838, 839 (1977) (internal quotations omitted).

[77]     *Id.*

to form the basis of a fraud claim. As discussed above, the sample of the Shingles only purportedly represented to the Dishmans what the Shingles would look like. A reasonable jury could only conclude that the sample represented to the Dishmans that the Shingles would generally conform to the qualities exhibited by the sample. It would be unreasonable for the Dishmans to infer from the sample that the Shingles would last thirty years, that the Defendant would continue to manufacture the Shingles, or that the Shingles contain any characteristic or quality outside of what the sample itself shows. Therefore, the sample shown to the Dishmans cannot be considered a misrepresentation as to the presence of defects.

The Dishmans also argue that the Defendant made an affirmative misrepresentation when it denied their warranty claim and stated that there was no manufacturing defect in the Shingles. However, this argument fails for two reasons. First, this alleged misrepresentation occurred after the Dishmans had already purchased and installed the Shingles on their roof – thus, they could not have relied upon this misstatement in deciding to purchase the Shingles. Second, the Dishmans also fail to establish reliance because they admit that they did not believe this claim to be true. Ms. Dishman testified that "Atlas sent us a letter confirming they had received all of that and that -- just basically saying that they didn't think that we had a problem. *And we didn't*

*agree.*"[78] She further stated that "we just didn't agree with that letter" and that she "did have reason to believe it wasn't true."[79] Furthermore, by this time, the Dishmans had already retained counsel.[80] Since the Dishmans did not believe in the veracity of this claim, they cannot assert that they relied upon the misstatement or were induced into taking any form of action by it that caused them harm.

The case that the Dishmans rely upon, *Georgia-Carolina Brick & Tile Co. v. Brown*,[81] is distinguishable. There, the defendant agreed to sell bricks to the plaintiff, all of which would be from the same "run" and have the same range of color.[82] However, the defendant shipped bricks from two different ranges of color, and the bricks laid had different appearances.[83] The defendant, when questioned, repeatedly assured the plaintiff that there were no problems with the bricks, and that they would look the same once they were cleaned up and dried.[84] The court concluded that the plaintiff established a prima facie case of fraud. The court noted that the defendant's assurances that the bricks would

---

[78]     Diane Dishman Dep. at 67 (emphasis added).

[79]     *Id.* at 68.

[80]     *Id.* at 63.

[81]     153 Ga. App. 747 (1980).

[82]     *Id.*

[83]     *Id.*

[84]     *Id.*

match when they dry were representations of fact as to the "inherent nature and quality of the brick," and "not mere opinions."[85] In contrast, the Dishmans can only establish that the Defendant represented that the Shingles were "quality" and would "hold up well." Furthermore, the Dishmans, unlike the plaintiff in *Georgia-Carolina Brick & Tile Co.*, cannot show that they relied upon the Defendant's assurances in its warranty denial that the Shingles were free from defects.

The Dishmans also fail to establish that the Defendant owed them a duty to disclose. "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."[86] The Dishmans did not have a confidential relationship with the Defendant, therefore they must show that the particular circumstances of the case justify imposing a duty to disclose upon the Defendant. The Dishmans argue that the particular circumstances of this case warrant imposition of a duty to disclose because the Defendant knew about defects in the Shingles and took steps to conceal these defects from consumers such as the Dishmans.[87]

However, the Court finds no such "particular circumstances" exist in this case warranting imposition of such a duty. "Those cases where Georgia courts

---

[85]     *Id.* at 748.

[86]     O.C.G.A. § 23-2-53.

[87]     Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 24-25.

have found particular circumstances giving rise to a duty to disclose involve dependent relationships sufficient to overcome the will of a party."[88] "Absent a confidential relationship, no duty to disclose exists between parties engaged in arms-length business transactions."[89] Here, the Dishmans have not established that they had any "justifiable dependence" on the Defendant.[90] In fact, the Dishmans have not established that they had any pre-purchase communications or relationship with the Defendant at all, let alone a confidential or dependent relationship. Instead, this relationship, at most, constituted an arms-length business transaction.[91] The Dishmans never had any direct interaction with the Defendant prior to purchasing the Shingles, and there was consequently no reason for them to expect any type of disclosure from the Defendant.

The Dishmans also argue that the Defendant owed them a duty to

---

[88]     *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1320 (N.D. Ga. 1998) (citing *Cochran v. Murrah*, 235 Ga. 304 (1975)); *see also McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015) ("Plaintiffs have failed to cite to a single case in which a court has applied Georgia law to find a duty to disclose outside of a confidential or special relationship in facts similar to this case, where there is no evidence that Defendants had direct knowledge of Plaintiffs' purchases of the vehicles in question and had no apparent relationship with Plaintiffs.").

[89]     *Lilliston v. Regions Bank*, 288 Ga. App. 241, 244 (2007).

[90]     *Id.*

[91]     The Dishmans did not purchase the Shingles directly from the Defendant, nor did they have any pre-purchase communications with the Defendant. Thus, labeling this as an arms-length business transaction may not even be an accurate description.

disclose because it actively concealed the defects in the Shingles.[92] "Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover."[93] However, since the Defendant never interacted with the Dishmans, it could not have actively concealed these alleged defects from them. In the cases cited by the Dishmans, the plaintiffs and defendants directly interacted with one another, and the defendant took some kind of action to conceal the alleged defects.[94] Unlike in *Georgia-Carolina Brick*, where the defendant actively attempted to hide the fact that the bricks purchased were from two separate runs and ranges, the Defendant here never had any form of direct communication or contact with the Dishmans, absent their warranty claim communications.[95] Without any actual interaction with the Dishmans, the Defendant never engaged in conduct that could be considered *concealment*. Therefore, no duty to disclose existed.

Finally, the Dishmans argue that whether the particular circumstances

---

[92]    Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 21.

[93]    *Georgia-Carolina Brick & Tile Co. v. Brown*, 153 Ga. App. 747, 755 (1980) (internal quotations omitted).

[94]    *See, e.g., id.* at 747-48.

[95]    *See id.* at 748.

of a case give rise to a duty to disclose is a question of fact for the jury.[96] While that is true, the Dishmans have not offered evidence that a jury could rely upon to conclude that the particular circumstances of the case justify imposition of a duty to disclose. While in many circumstances this question is appropriate for a jury to consider, this case presents no dispute of material fact as to this issue. The evidence, construed in the light most favorable to the Dishmans, has not established that the Defendant owed the Dishmans a duty to disclose. Therefore, their fraudulent concealment claim fails as a matter of law.

### 3. Leak Related Damages

Next, the Defendant argues that the Dishmans have failed to provide evidence of leak-related damages. The Court agrees. The Dishmans have failed to show that they have experienced a leak in their roof at all, let alone prove that such a leak was the result of a defect in the Shingles. As this Court previously noted, "the alleged defect in the Shingles must have caused a class member's injuries in order for that class member to recover."[97] "If the roof fails due to hail or wind damage or improper installation, the homeowner-class member has not been damaged."[98] The Dishmans have only provided evidence that the Shingles experienced cracking, blistering, and excessive granule loss.[99]

---

[96]    Dishmans' Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 20.

[97]    *See* [Doc. 64] at 34.

[98]    *Id.* at 34-35.

[99]    Dishmans' Statement of Additional Material Facts ¶¶ 24-27.

They have not provided any evidence that defects in the Shingle caused some type of external injury, such as a roof leak. In fact, in her deposition testimony, Ms. Dishman admitted that no leaks have occurred because of a defect in the Shingles.[100] Even if the Dishmans can prove that the Shingles are defective in general, they would need to provide evidence of causation and damages to recover for leak-related injuries. They have failed to do so. Therefore, to the extent that the Dishmans seek to recover for damages resulting from leaks in their roof, these claims for damages fail as a matter of law.

### 4. Declaratory Judgment

Next, the Defendant moves for summary judgment as to the Dishmans' request for declaratory relief. The Defendant argues that the Dishmans lack standing to seek declaratory relief, and that declaratory relief would violate the Defendant's Seventh Amendment right to a jury trial.[101] However, the Court concludes that the Dishmans' request for a declaratory judgment can proceed to the extent that their substantive claims also survive.

The Defendant first argues that the Plaintiffs lack standing because the requested declarations will not redress their injury.[102] To satisfy the constitutional case-or-controversy requirement, a plaintiff must allege personal injury

---

[100]     Diane Dishman Dep. at 70.

[101]     Def.'s Mot. for Partial Summ. J. as to the Dishmans, at 11-16.

[102]     *Id.* at 11-13.

"that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision."[103] The Plaintiffs may establish redressability if they show that the "practical consequence" of the declaratory relief "would amount to a significant increase in the likelihood that the [Plaintiffs] would obtain relief that directly redresses the injury suffered."[104] Here, the requested declarations – e.g., that the Shingles are defective – would make it more likely that the Dishmans would obtain the necessary relief from the Defendant because it would establish an essential component to liability. And although the Dishmans' remaining claims may provide more direct relief, the Declaratory Judgment Act allows plaintiffs to seek a declaration of rights "whether or not further relief is or could be sought."[105] Therefore, the Dishmans do not lack standing as to their request for declaratory relief.

The Defendant also argues that a declaratory judgment would not provide the Dishmans with relief because the doctrine of *res judicata* would bar them from pursuing any claims in the future related to these facts.[106] However, a declaratory judgment in the Dishmans' favor would establish an essential component of liability and establish an enforceable right on the part of the

---

[103]    *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014).

[104]    *Utah v. Evans*, 536 U.S. 452, 464 (2002).

[105]    28 U.S.C. § 2201.

[106]    Def.'s Mot. for Partial Summ. J. as to the Dishmans, at 15.

Dishmans relating to this liability. In such a scenario, the Dishmans would not be asking for a second bite at the apple by seeking to enforce these rights because they would have already received a favorable adjudication by this Court. Furthermore, as already noted, the Declaratory Judgment Act does not require a plaintiff to seek further relief in order to receive a declaratory judgment. Thus, the prospect of a future suit being barred due to *res judicata* should not preclude a declaratory judgment in this action, since the Dishmans may not ever seek future relief. Therefore, this argument lacks merit.

The Defendant also argues that the Plaintiffs' declaratory judgment claim must be dismissed because it abridges the Defendant's right to a jury trial under the Seventh Amendment.[107] But as the Eighth Circuit Court of Appeals has explained, "[a] litigant is not necessarily deprived of a jury trial merely because it is a party to a declaratory judgment action . . . if there would have been a right to a jury trial on the issue had it arisen in an action other than one for declaratory judgment, then there is a right to a jury trial in the declaratory judgment action."[108] Since this action is essentially legal in nature, the

---

[107]    *Id.* at 13.

[108]    *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1098-99 (8th Cir. 1997); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959) ("[T]he Declaratory Judgment Act . . . specifically preserves the right to jury trial for both parties."); *Simler v. Conner*, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions as petitioner requested . . . [and] the courts

Defendant is still entitled to a trial by jury. Therefore, the Plaintiffs' claim for a declaratory judgment does not violate the Seventh Amendment.

## B. Anthony Costanzo

Next, the Defendant moves for partial summary judgment as to Anthony Costanzo. The Defendant argues that: (1) Costanzo's tort claims fail due to the economic loss rule; (2) the express warranty claims based on outside statements fail as a matter of law; (3) Costanzo's warranty claims are time barred; (4) Costanzo's negligence, strict liability, and fraudulent concealment claims are time barred; (5) Costanzo's fraudulent concealment claim fails; (6) any claims for leaked-related damages fail as a matter of law; and (7) Costanzo lacks standing to pursue claims for declaratory relief. The Court addresses each of these arguments in turn.[109]

### 1. Negligence and Strict Liability

The Defendant first argues that Costanzo's negligence and strict liability claims are barred by the economic loss rule.[110] "The economic loss rule provides that absent personal injury or damage to property other than to the allegedly

---

below erred in denying petitioner the jury trial guaranteed him by the Seventh Amendment.").

[109]    Costanzo does not oppose the Defendant's Motion for Partial Summary Judgment with regard to his claim for breach of the implied warranty of merchantability. *See* Costanzo's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 2 n.1. Therefore, the Court deems this claim to be abandoned.

[110]    Def.'s Mot. for Partial Summ. J. as to Costanzo, at 4-6.

defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action."[111] This rule applies to strict liability claims as well.[112] At the Motion to Dismiss stage, the Court dismissed the Dishmans' negligence and strict liability claims because they only alleged damage to the Shingles themselves, but allowed Costanzo's claims to proceed because he alleged that the defective Shingles caused leaks that damaged his other property. The Defendant now argues that Costanzo has failed to produce evidence supporting this allegation. Thus, according to the Defendant, these claims should be barred by the economic loss rule.[113] The Court agrees.

Costanzo's claims for negligence and strict liability fail because he has not produced evidence that a defect in the Shingles, as opposed to some other factor, caused the leak that his roof experienced. As this Court previously noted, "[a]ll roofs will fail eventually."[114] "If the roof fails due to hail or wind damage or improper installation, the homeowner-class member has not been damaged."[115] Costanzo points to the opinion of the Plaintiffs' expert, Dean Rutila, as evidence

---

[111]     *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 147 (1999).

[112]     *See Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.*, 314 Ga. App. 360, 366 (2012) ("[T]he economic loss rule bars the plaintiff from seeking recovery under strict liability or negligence theories.").

[113]     Def.'s Mot. for Partial Summ. J. as to Costanzo, at 5.

[114]     *See* [Doc. 64] at 34.

[115]     *See id.* at 34-35.

that a defect in the Shingles caused his roof leaks. Rutila studied 351 roofs containing the Shingles, including Costanzo's roof, and concluded that the Shingles are defective.[116] However, Rutila admits that he was unable to show that any of the alleged defects in the Shingles, including blisters, cracks, and loss of granule surfacing, resulted in a leak in any of the roofs he studied.[117] Instead, he stated that he believed that the Shingles "will leak" in the future.[118] Rutila concedes that he was unable to show that the roofs he studied, including Costanzo's roof, had experienced leaks due to defects in the Shingles. Given this admission, Rutila's expert opinion is insufficient to prove that a defect in the Shingles, as opposed to some other factor, caused the roof leaks in Costanzo's home. Therefore, since Costanzo has not provided evidence establishing a causal link between defects in the Shingles and an external injury to his person or property, his claims for negligence and strict liability are precluded by the economic loss rule.[119]

### 2. Express Warranties Outside of Atlas Limited Warranty

Next, the Defendant moves for summary judgment as to Costanzo's claim

---

[116]     Rutila Dep. at 84-85.

[117]     *Id.* at 84-85, 124, 167.

[118]     *Id.* at 84-85.

[119]     *Busbee v. Chrysler Corp.*, 240 Ga. App. 664, 666 (1999) ("Here, since it is undisputed that Busbee suffered neither an injury to his person nor to his property, his attempt to recover under a strict liability theory was foreclosed absent evidence demonstrating the existence of an exception to the economic loss rule.").

for breach of express warranties outside of the Atlas Limited Warranty. Costanzo asserts that the Shingles did not conform to representations made by the Defendant in two ways. First, Costanzo claims that he saw a sample of the Shingles, and that the Shingles installed on his roof did not conform to that sample.[120] Second, Costanzo contends that the Defendant represented that the Shingles would last for thirty years, which the Shingles on his roof failed to do.[121] The Court finds that the Defendant is entitled to summary judgment as to each of these claims.

First, Costanzo's warranty by sample argument fails. As explained above, O.C.G.A. § 11-2-313 provides that an express warranty can be created by sample. A sample is an express warranty that the goods sold and to be delivered "will be of as good quality as the samples exhibited."[122] Here, Costanzo has failed to show that the Shingles delivered were a different or lesser quality than the sample he viewed. Even if those Shingles did not live up to the expectations he had, he still admits that he received the same type of Shingles as the sample he inspected. This does not constitute a breach of warranty.[123] A warranty by

---

[120]    Costanzo's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 4.

[121]    *Id.*

[122]    *Christian v. Knight & Co.*, 128 Ga. 501 (1907).

[123]    *See Printing Ctr. of Tex., Inc. v. Supermind Publ'g Co.*, 669 S.W.2d 779, 784 (Tex. App. 1984) ("Appellee's witness testified that he was shown a sample of the newsprint to be used and that the tendered books were not the same color as the sample. The witness stated the pages of the books were gray while the sample was white. This testimony is evidence of nonconformity

sample merely warrants that the good delivered will be the same or similar to the sample of the good viewed. Costanzo received the same type of Shingle as the sample he viewed – even if the quality of those Shingles ultimately became questionable. Since Costanzo cannot show that the Shingles he received were of a lesser quality than the sample he viewed, he cannot prove that there was a breach, which is an essential element of a breach of warranty claim.

The Defendant is also entitled to summary judgment as to Costanzo's express warranty claims based upon the Defendant's marketing materials. The Defendant argues that Costanzo has not shown that he relied upon these marketing materials. However, as with the Dishmans, Costanzo need not prove reliance. Instead, he only needs to show that the Defendant did in fact make the alleged statements constituting warranties. But, Costanzo's claim fails because he has failed to produce evidence of these express warranties or their specific terms. The only evidence Costanzo provides is his deposition testimony describing a sales brochure that referenced a thirty-year warranty for the Shingles. During this deposition, Costanzo testified that he could not recall any statements made concerning the Shingles outside of the brochure that he viewed.[124] Mr. Costanzo stated that "all I recall is what I saw on the . . . brochure. That's – there were certain things that stuck out in the brochure that

---

because any sample which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample.").

[124]     Costanzo Dep. at 22.

we were looking for in the house, a list of features, what we got with the house. And that was one of the things that was mentioned. I don't recall if we had a conversation about specific shingles or warranties or anything like that."[125] Furthermore, when questioned whether the brochure mentioned a thirty-year warranty, or whether the brochure stated that the Shingles would last thirty years, Costanzo responded that "I don't recall. I just remember seeing the 30 year lasting of the shingles. I don't remember the exact words, what it said."[126]

Thus, Costanzo has offered no evidence that the Defendant warranted to him that the Shingles complied with industry standards and building codes, or that they would maintain any other specific quality. Furthermore, the evidence that Costanzo offers that purports to show that the Shingles would *last* for thirty years is also insufficient. The only affirmation of fact or promise made by the Defendant that Costanzo identifies in support of this allegation is a single line in a sales brochure offered by a builder mentioning a thirty-year warranty for the Shingles.[127] A reasonable jury could only conclude that this is a reference to the Atlas Limited Warranty, and not a guarantee that the lifetime of the Shingles would be thirty years. Costanzo admits that he cannot recall whether the marketing materials referred to a thirty-year warranty, or a thirty-year

---

[125]    *Id.* at 28.

[126]    *Id.* at 27.

[127]    *Id.* at 21.

guaranteed lifetime. Since there are repeated references to the thirty-year Atlas Limited Warranty, and no concrete evidence that the Defendant ever promised that the Shingles would last for thirty years, a reasonable jury could only conclude that the statements Costanzo encountered in these advertising materials referred to the Atlas Limited Warranty.

The only other evidence Costanzo can offer concerning the other alleged statements is the evidence of Villar and Mattina describing the range of statements made in general in advertising materials.[128] However, as explained above, this evidence references statements by the Defendant which were not made *during* this transaction, and cannot form the basis of a claim for breach of express warranty. Therefore, since Costanzo has failed to produce evidence establishing the existence of these outside warranties, along with the specific terms of these warranties, his express warranty claim based on marketing materials fails as a matter of law.

The Defendant also argues that Costanzo's claims for breach of the implied warranty of merchantability and breach of the advertisement-based express warranties are time barred under O.C.G.A. § 11-2-725(2).[129] O.C.G.A. § 11-2-725 provides that an action for breach of any contract for the sale of goods

---

[128] Costanzo's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 8.

[129] Since Costanzo does not oppose the Defendant's Motion for Partial Summary Judgment as to his claim for breach of the implied warranty of merchantability, the Court need not address whether it is time barred.

must be commenced within four years.[130] It further provides that a breach of warranty occurs when delivery is tendered, unless the warranty extends to future performance of the goods:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.[131]

Under this four-year statute of limitations, Costanzo's sample-based breach of warranty claim is time barred. The Shingles were installed on Costanzo's house in October 2004, and Costanzo testified that he viewed a sample board of shingles before choosing to purchase the Shingles.[132] Therefore, any breach of this warranty would have occurred in October 2004, when delivery of the Shingles was tendered. This warranty by sample does not explicitly extend to the future performance of the Shingles – it warrants that the Shingles delivered would be the same as the Shingles viewed. Therefore, Costanzo's breach of warranty by sample is time barred. However, Costanzo's claim based upon the express warranty that the Shingles would last thirty years would not be subject

---

[130]   O.C.G.A. § 11-2-725(1); *see also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013) ("Georgia has adopted the UCC's four-year statute of limitations in relation to contracts for the sale of goods . . . .").

[131]   O.C.G.A. § 11-2-725(2).

[132]   Def.'s Statement of Material Facts as to Costanzo ¶¶ 2-3; Costanzo's Statement of Additional Material Facts ¶ 30.

to this statute of limitations, since such a warranty allegedly extended to the performance of the Shingles, i.e., that they would last for thirty years. Nonetheless, as explained above, this warranty claim still fails because Costanzo has failed produce evidence that the Defendant ever made such a promise concerning the longevity of the Shingles.

### 3. Fraudulent Concealment

Next, the Defendant moves for summary judgment as to Costanzo's fraudulent concealment claim. The Defendant argues that this claim fails for two reasons. First, the Defendant argues that this claim is time barred.[133] Second, it contends that the claim also fails on the merits because the Defendant did not owe Costanzo a duty to disclose.[134] The Court concludes that this claim fails because Costanzo has not shown that the Defendant owed him a duty to disclose. The Court therefore finds it unnecessary to address whether this claim is time barred.

As noted above, to succeed on a fraudulent concealment claim, a plaintiff must show that the defendant was under a duty to disclose.[135] The Defendant argues that it could not have owed Costanzo a duty of disclosure since it never

---

[133]  Def.'s Mot. for Partial Summ. J. as to Costanzo, at 11.

[134]  *Id.* at 15-16.

[135]  *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015).

had any pre-purchase communications with him.[136] Costanzo makes two arguments in response. First, he argues that the Defendant made pre-sale affirmative misrepresentations, including a sample Shingle and a thirty-year warranty, that induced him to purchase the Shingles. Second, he contends that the "particular circumstances" of the case justify imposition of a duty to disclose upon the Defendant because it actively concealed the defects in the Shingles from him.[137] However, as with the Dishmans, these arguments fail.

First, the Defendant's purported affirmative misrepresentations to Costanzo fail to constitute a basis for a fraud claim. As to the thirty-year warranty, Costanzo has not shown that this was a misrepresentation – the Defendant did in fact offer a thirty-year warranty with the Atlas Limited Warranty. Costanzo also seems to contend that the Defendant represented that the Shingles would last thirty years, which constitutes an actionable misrepresentation.[138] However, as discussed above, Costanzo admitted in his deposition that he could not recall whether such representations promised a thirty-year warranty, or that the Shingles would *last* for thirty years. Given that no other evidence suggests that the Defendant ever promised that the Shingles would last for thirty years, and that the evidence contains repeated references to the

---

[136] Def.'s Mot. for Partial Summ. J. as to Costanzo, at 16.

[137] Costanzo's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 19.

[138] *Id.* at 20.

thirty-year Atlas Limited Warranty, no reasonable jury could conclude that the Defendant represented that the Shingles would last for thirty years. Instead, a reasonable jury could only conclude that such statements referenced the Atlas Limited Warranty. Thus, this alleged misrepresentation cannot provide the foundation for Costanzo's fraud claim.

Likewise, with regard to the sample Shingle, Costanzo has also not shown that this is a misrepresentation at all. As discussed above, the sample merely represented to Costanzo that he would receive Shingles of similar quality to the sample. The sample intended to convey that it was representative of the type of Shingles that Costanzo would receive. As noted above, Costanzo has not shown that the Shingles he received were different than the sample he viewed. Costanzo alleges that the Shingles were inherently defective – but that does not mean that the sample Shingle was not representative of the Shingles he received. Therefore, for the same reason that Costanzo's warranty by sample claim fails, the sample also cannot constitute a basis for his fraud claim.

Second, Costanzo also fails to establish that the Defendant owed him a duty to disclose based upon the particular circumstances of the case. Like the Dishmans, Costanzo entered into an arms-length transaction with the Defendant.[139] He did not purchase the Shingles under circumstances sufficient

---

[139]    In fact, it may be a stretch to classify this as an arms-length transaction, since Costanzo did not purchase the Shingles from the Defendant.

for the Defendant to overcome his will.[140] Therefore, the ordinary reasons for imposing a duty to disclose do not exist here. And, as with the Dishmans, Costanzo has not shown that the Defendant actively concealed the defects from him. The Defendant must have taken some type of concrete action to have actively concealed the defect.[141] The Defendant could not have taken such an action or engaged in conduct considered *active* concealment when it never had any form of contact or interaction with Costanzo. Therefore, no duty to disclose existed. Since Costanzo has failed to establish a prima facie case of fraud, the Court finds it unnecessary to address whether this claim is time barred.

### 4. Declaratory Judgment

Finally, the Defendant moves for summary judgment as to Costanzo's request for a declaratory judgment. The Defendant argues that Costanzo lacks standing to seek a declaratory judgment, and that such a judgment would violate the Seventh Amendment.[142] However, for the same reasons that the Dishmans' declaratory judgment claim can survive, Costanzo's claim for a declaratory judgment can also proceed.

---

[140]    *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1320 (N.D. Ga. 1998) (citing *Cochran v. Murrah*, 235 Ga. 304 (1975)).

[141]    *Cf. Paws Holding, LLC v. Daikin Indus., Ltd.*, CV 116-058, 2017 WL 706624, at *15 (S.D. Ga. Feb. 22, 2017) ("Notably, '[c]oncealment of the cause of action must be by positive affirmative act and not by mere silence.'").

[142]    Def.'s Mot. for Partial Summ. J. as to Costanzo, at 17-21.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Partial Summary Judgment as to the Plaintiffs Diane Dishman and Rodney Dishman [Doc. 65] is GRANTED in part and DENIED in part, and the Defendant's Motion for Partial Summary Judgment as to the Plaintiff Anthony Costanzo [Doc. 66] is GRANTED in part and DENIED in part.

SO ORDERED, this 8 day of June, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge